IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* WILLIAM R. BALDIGA and the FAH LIQUIDATING TRUST,<br><br>Plaintiffs/Relators,<br><br>v.<br><br>HYBRID TECH HOLDINGS, LLC, HYBRID TECHNOLOGY, LLC, and ACE STRENGTH INTERNATIONAL, LTD.,<br><br>Defendants. | Civil Action No. 15-00019(JEB)<br><br>**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730**<br><br>**Jury Trial Requested** |

## SECOND AMENDED FALSE CLAIMS ACT QUI TAM COMPLAINT

Plaintiff the United States of America *ex rel.* William R. Baldiga and the FAH Liquidating Trust by and through relators' attorneys, Brown Rudnick LLP, allege for their *qui tam* complaints as follows:

### PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1. This is a civil action to recover damages sustained by the United States when the defendants coordinated with others in connection with an auction of the United States Department of Energy's non-performing loan to Fisker Automotive, Inc. and Fisker Automotive Holdings, Inc. (collectively, "Fisker"). In October 2013—the time of the auction—the Department of Energy (the "DOE") was Fisker's senior lender, holding a $168.5 million loan (the "DOE Loan") secured by substantially all of Fisker's assets. As a result of the defendants' coordination and false statement, the defendants were able to purchase the DOE Loan for $25 million. In February 2014—just a few months later—a major part (but less than all) of those assets were sold in a bankruptcy auction for $149.2 million.

2. The relators William R. Baldiga and the FAH Liquidating Trust, as successor to (among other things) claims of the Official Committee of Unsecured Creditors of Fisker Automotive Holdings Inc. (the "Committee") (collectively, the "Relators"), bring this action on their own behalf and on behalf of the United States of America against the defendants Hybrid Tech Holdings, LLC ("Hybrid Holdings"), Hybrid Technology, LLC ("Hybrid Technology") (collectively, "Hybrid"), and Ace Strength International, Ltd ("Ace Strength") (collectively, the "Defendants"). This Action is filed under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "False Claims Act" or "FCA"), to recover damages sustained by, and penalties owed to, the United States as the result of the Defendants having knowingly presented or caused to be presented to the United States false claims in exchange for the transfer of ownership of the DOE Loan.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims brought under the False Claims Act pursuant to 31 U.S.C. § 3730(a), 28 U.S.C. §§ 1331, 1345, and 1367. The underlying facts sustaining this Court's jurisdiction are set forth in greater detail below.

4. Venue lies in this District pursuant to § 3732(a), and 28 U.S.C. §§1391(b) and 1391(c), because many of the acts complained of herein took place in this District. Among other things, Defendants submitted false claims to the United States in this District.

5. To the extent that there has been a public disclosure, the Relators are original sources under 31 U.S.C. § 3730(e)(4). They have direct and independent knowledge of the information on which the allegations are based and have voluntarily provided the information to the Government before filing an action under this section which is based on the information. Indeed, as set forth below, the defendants' conduct was uncovered during the course of litigation in the bankruptcy of Fisker, currently styled *In re FAH Liquidating Corp. (f/k/a Fisker Automotive Holdings, Inc.), et al.* (Bankr. D. Del. Case No. 13-13087-KG) (the "Fisker Bankruptcy"), which was commenced on the

same day that Hybrid purchased the DOE Loan using false claims and certifications and by coordinated bids.

6. Relators are entitled to and demand trial by Jury.

## PARTIES AND OTHER ENTITIES AND INDIVIDUALS

7. Plaintiff is the United States of America on behalf of its agency, the United States Department of Energy.

### The Committee

8. The Official Committee of Unsecured Creditors of Fisker Automotive Holdings Inc. was a statutory committee appointed under 11 U.S.C. § 1102 by the Office of the United States Trustee on December 5, 2013 in the Fisker Bankruptcy. The Committee was comprised of six unsecured creditors of Fisker. The Committee, through its agent Mr. Baldiga, had imputed knowledge of facts known to its agent Mr. Baldiga as he investigated the circumstances of the DOE Loan auction as the Committee's counsel. Pursuant to the *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code (With Technical Modifications),* dated July 9, 2014 (the "Plan"), filed in the Fisker Bankruptcy, the Committee was dissolved on August 13, 2014—the date the Plan went effective.

### The Relators

9. Relator William R. Baldiga is a resident of Massachusetts. He served as legal counsel for the Official Committee of Unsecured Creditors in the Fisker Bankruptcy and, in that capacity, acted as an agent for the Committee in discovering the Defendants' false and fraudulent conduct. He is an original source of the facts and information hereinafter set forth concerning the activities of the Defendants. The facts averred herein are based upon his personal investigations and upon documents and information in his possession or in the possession of the FAH Liquidating Trust (as described below).

10. Relator FAH Liquidating Trust (the "Trust") is a liquidating bankruptcy trust established pursuant to the Plan. The Trust is successor-in-interest to the Debtors and their estates in the Fisker Bankruptcy. The Trust also is successor-in-interest to and the present holder of all claims previously held by the Committee and the Debtors in the Fisker Bankruptcy and, as such, through the Committee's agent Mr. Baldiga, the Trust is an original source of the facts and information hereinafter set forth concerning the activities of the Defendants.

Defendants

11. Upon information and belief, Defendant Ace Strength International, Ltd. is a Hong Kong Limited Liability Company that provided funding to Fisker.

12. Upon information and belief, Defendant Hybrid Tech Holdings, LLC is a Delaware limited liability company.

13. Upon information and belief, Defendant Hybrid Technology, LLC is a Delaware limited liability company formed on or before October 7, 2013 as an investment vehicle to bid on, and ultimately to purchase, the DOE Loan.

## FACTUAL ALLEGATIONS

**Fisker Company Background and Origin of Fisker's Loan from the Department of Energy**

14. Fisker was co-founded by Henrik Fisker and Bernhard Koehler in 2007 with the goal of designing, assembling and manufacturing premium plug-in hybrid electric vehicles.

15. To facilitate vehicle design and manufacturing efforts, on or about December 31, 2008, Fisker applied for access to loans totaling $528.7 million under the DOE's Advanced Technology Vehicles Manufacturing Loan Program (the "ATVM Loan Program").

16. The ATVM Loan Program, created under section 136 of the Energy Independence and Security Act of 2007, Pub. L. 110-140, 121 Stat. 1492, 42 U.S.C. § 17013, is a loan program that supports the development of advanced technology vehicles and associated components in the United States.

4

17. On or about September 18, 2009, the DOE issued a Conditional Commitment Letter to Fisker, effectively approving Fisker's loan application.

18. Pursuant to the Loan Arrangement and Reimbursement Agreement, dated as of April 22, 2010 (the "DOE Loan Agreement"), between Fisker and the DOE, the DOE agreed to, among other things: (a) arrange for the Federal Financing Bank ("FFB") to purchase notes from Fisker in an amount not to exceed $169.3 million to fund the development, production, sale and marketing of Fisker's Karma sedan; and (b) arrange for the FFB to purchase notes from Fisker in an amount not to exceed $359.4 million to fund the development, production, sale and marketing of Fisker's Nina model automobile, later known as the Atlantic sedan, and the construction of an assembly and production site in the United States.

19. The DOE Loan Agreement required Fisker to achieve certain construction, production, manufacturing and other milestones (the "Milestones") by certain pre-established dates and to maintain certain financial covenants.

20. The DOE Loan Agreement states that Fisker's failure to achieve any Milestone by the relevant completion date is an "Event of Default" under the DOE Loan Agreement.

**Fisker's Insolvency**

21. Upon information and belief, following Fisker's failure to achieve various Milestones by relevant completion dates, Fisker and the DOE negotiated several waivers and agreed upon new financial covenants, Fisker performance obligations and Milestone completion dates.

22. The DOE and Fisker executed two Limited Waivers to the DOE Loan Agreement. The first was executed on September 5, 2012, and the second on January 25, 2013.

23. By March 2013, and perhaps earlier, Fisker was insolvent. In the weeks following that date, Fisker's Board of Directors considered various potential courses of action to address the insolvency, including proposals that third parties purchase the DOE Loan.

### The DOE Loan Auction

24. Prompted by the proposals to purchase the DOE Loan, on September 17, 2013, the DOE publicized its plan to sell the DOE Loan through a competitive auction. At that time, the DOE Loan was non-performing, with an outstanding amount due of approximately $168.5 million. Several interested parties executed non-disclosure agreements with the DOE and Fisker to obtain access to an electronic data room for due diligence.

25. Upon information and belief, on or about October 7, 2013, Hybrid submitted an initial binding bid, with a summary term sheet and the Business Plan Summary (defined below) attached, containing materially false statements and certifications, to the DOE.

26. The DOE selected bidders to participate in the final, live phase of the auction, including Hybrid, Wanxiang America, Inc. ("Wanxiang") and WM GreenTech Automotive Corp. ("GTA").

27. The final, live phase of the auction occurred on October 11, 2013.

28. Upon information and belief, prior to and during the auction, Hybrid took actions designed to discourage other bidders, all in an effort to ensure its acquisition of the DOE Loan. Upon information and belief, Hybrid spoke with a senior executive of Wanxiang about the auction. Some or all of these calls took place during the course of the actual auction on October 11, 2013, while the bidders were in separate rooms.

29. Upon information and belief, Hybrid placed similar calls to GTA. Upon information and belief, through these actions, Defendants restrained bidding during the DOE Loan auction and Hybrid's bid for $25 million was the only bid submitted to the DOE.

### Hybrid-DOE Loan Purchase Agreement and False Statements and Certifications Submitted by Hybrid

30. Upon information and belief, based on the statutory purpose of the ATVM Loan Program, which is to promote domestic manufacturing facilities and related engineering integration

for advanced technology vehicles in the United States, the DOE required statements and submissions of summary business plans by all bidders for the DOE Loan to sufficiently evidence an intent and capability to conduct substantial manufacturing operations in the United States.

31. Upon information and belief, to protect the American public and taxpayers, the DOE also required statements and representations by all bidders for the DOE Loan that, among other things, (i) such bidder, in its participation in the DOE Loan auction process, would act independently, (ii) its bids would be submitted in good faith, and (iii) that its participation in the auction would be (and was) conducted in accordance with the law.

32. On November 13, 2013, roughly one month after Hybrid's actions prior to and during the auction, summary term sheet and Business Plan Summary (as defined in Article 1 of the Loan Purchase Agreement), the *Loan Purchase Agreement between Hybrid Technology, LLC and United States Department of Energy* (the "Loan Purchase Agreement") was executed by the DOE, thereby transferring the DOE's interests in the DOE Loan to Hybrid.

33. The Loan Purchase Agreement provides in section 4.1(h) ("Representations and Warranties of the Company"), that:

> The representations and warranties by [Hybrid] in this Agreement and any information provided by it or on its behalf to DOE in writing on or after October 7, 2013 in connection with the Auction or the transactions contemplated by this Agreement, are true and correct in all material respects.

34. In addition, section 4.1(c) ("No Conflicts; Consents") provides, in relevant part, that:

> Neither the execution and delivery by [Hybrid] of this Agreement or the Closing Documents to which it is a party, nor compliance by it with the terms and provisions hereof or thereof, will conflict in any material respect with or result in a material breach of any of the terms, conditions or provisions of . . . (ii) (A) any . . . law, statute or regulation, to which it is subject, or (B) any agreement, contract or commitment to which it or its properties are subject, the breach of which . . . law, statute, regulation, agreement, contract or commitment would have an adverse effect on its ability to execute, deliver or perform its obligations pursuant to this Agreement or such Closing Documents.

35.     This representation was false because, by entering into the Loan Purchase Agreement, after coordinating with others to restrain bidding at the auction, the Defendants engaged in a violation of the "law, statute or regulation, to which [Hybrid] is subject."

36.     In addition to the Defendants' false statements and certifications, by providing a bid at an auction, the Defendants impliedly and falsely stated and certified that the bid was independent of other bidders' planned bids, and that it was not the product of, or submitted in connection with, coordination among other bidders. Moreover, by submitting a bid in an ostensibly competitive auction, Hybrid impliedly falsely represented and certified that its bid was independent and not a product of coordination with other bidders.

### Measure of Damages

As a result of the Defendants' coordination, Hybrid was able to purchase the DOE Loan for $25 million. As part of the Fisker Bankruptcy, the assets of Fisker were auctioned in a transparent and fair bankruptcy auction, which resulted in Wanxiang purchasing most but not all of Fisker's assets for more than $149.2 million in cash and other value. (The assets not sold to Wanxiang were worth several additional million dollars, and the value of those additional assets likely increase materially the United States' losses beyond $124,200,000.) Accordingly, as a result of the Defendants' improper conduct, the DOE received at least $124.2 million less than it would have absent the Defendants' improper conduct.

### VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. § 3729(a))

37.     The United States seeks relief against Defendants under Section 3729(a) of the False Claims Act, 31 U.S.C. § 3729(a).

38.     Defendants knowingly presented, and caused to be presented, materially false claims and express and implied false certifications that resulted in the transfer of ownership in the DOE

Loan by the United States to the Defendants for a suppressed price, in connection with coordinated actions by the Defendants in an effort to restrain bidding in the DOE Loan auction.

39. The United States transferred ownership interests in the DOE Loan to Defendants because of improper conduct by the Defendants.

40. By reason of Defendants' false claims and certifications, improper conduct and coordination to restrain bidding, the United States has been damaged in an amount equal to, at least, $124.2 million.

WHEREFORE, Plaintiffs, the United States *ex rel.* William R. Baldiga and FAH Liquidating Trust request that judgment be entered in their favor and against Defendants as follows:

(a) On Claims for Relief for Violation of the False Claims Act (31 U.S.C. § 3729(a)) for treble the United States' damages, plus an $11,000 penalty for each false claim presented;

(b) Awarding William R. Baldiga, FAH Liquidating Trust, and Official Committee of Unsecured Creditors of Fisker Automotive Holdings Inc. the relators' share pursuant to 31 U.S.C. § 3730(d);

(c) On Claims for Relief for Violation of the False Claims Act, an award of costs and attorney's fees pursuant to 31 U.S.C. § 3730(d); and

(d) Awarding such further relief as is proper.

**JURY TRIAL IS DEMANDED**

DATED: December 9, 2019

                                                 Respectfully submitted,

                                                 **BROWN RUDNICK LLP**

                                    By: _____
                                        Elliot J. Weingarten (D.C. Bar #1023023)
                                        Stephen A. Best (D.C. Bar #428447)
                                        601 13th Street, NW, Suite 600
                                        Washington, DC 20005
                                        202-536-1700

                                        *Counsel for Plaintiffs/Relators*